UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BRIANNA LYNN KELLY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, Acting )<br>Commissioner of the Social Security )<br>Administration, )<br>)<br>Defendant. ) | Case No. 2:22CV3-PPS |

## OPINION AND ORDER

Brianna Lynn Kelly applied for a period of disability and disability insurance benefits, as well as supplemental security income, claiming that she had become disabled as of January 1, 2019. The Commissioner of Social Security determined that Kelly was disabled from July 2, 2019 through August 13, 2020, but not before or after. Kelly has appealed from this decision, claiming that the administrative law judge committed three errors which require a reversal of her decision.

### Background

In her written decision, the ALJ determined that Kelly has the severe impairments of obesity, status post gastric bypass in December 2018, degenerative disk disease, chronic inflammatory demyelinating polyneuritis or CIDP, and Guillain-Barré syndrome. [A.R. 14.[1]] The ALJ also found that Kelly has non-severe impairments of

---

[1] The Administrative Record (A.R.) in this case is found at Docket Entry # 7. Citations are to the page number in the lower right-hand corner of the A.R.

mild degenerative joint disease of both knees and anxiety. [A.R. 14.] The ALJ then determined that Kelly did not meet any of the potentially applicable social security "Listings," the classifications for presumptive disability. [A.R. 15.]

This appeal is complicated by findings made by the ALJ that were a little out of the ordinary. The ALJ first found that Kelly was not disabled; she then determined that Kelly became disabled; and she lastly decided that Kelly later improved to the point of no longer being disabled. To arrive at these conclusions, the ALJ set out three separate residual functional capacity determinations for the three separate time frames. The term "residual functional capacity" means conclusions about what a claimant is capable of doing for work "despite his or her limitations or restrictions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022).

The first time period the ALJ addressed is from the date on which Kelly alleged she became disabled (January 1, 2019) and the day before the ALJ ultimately determined that Kelly actually became disabled (July 1, 2019). The second time period runs from July 2, 2019 through August 13, 2020, and represents the span during which the ALJ concluded Kelly was, in fact, disabled. The third time period is from August 14, 2020 to the time of the ALJ's decision on April 1, 2021. The ALJ concluded that as of August 14, 2020, Kelly had experienced medical improvement significant enough that she was no longer disabled.

The ALJ concluded that during the first and third periods of time, Kelly "was capable of performing past relevant work" that "did not require the performance of

2

work-related activities precluded by [her] residual functional capacity." [A.R. 22.] By contrast, the ALJ found that [d]uring the closed period of July 2, 2019 through August 13, 2020, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform." [A.R. 23.]   Based on these findings, the ALJ held that Kelly was disabled from July 2, 2019 through August 13, 2020, but that after that later date she was no longer disabled.  [A.R. 24.]

## Standards Governing My Review

In a Social Security disability appeal, my role as district court judge is limited. I do not review the evidence to make a determination whether a claimant is disabled and entitled to benefits. Instead, I review the ALJ's written decision to determine whether the ALJ applied the correct legal standards and whether the decision's factual determinations are supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).  If substantial evidence supports the ALJ's factual findings, they are conclusive. *Id.*; 42 U.S.C. §405(g). The Supreme Court has said that "substantial evidence" means more than a "scintilla" of evidence, but less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion. *Durham v. Kijakazi*, 53 F.4th 1089, 1094 (7th Cir. 2022).  In the disability context, "the threshold for such evidentiary sufficiency is not high." *Blestek v. Berryhill*, ___ U.S. ___, 139 S.Ct. 1148, 1154 (2019).

3

My review is guided by the principle that "[t]he ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and the conclusions so that [I] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Given this modest standard, the review is a light one, but of course I cannot "simply rubber-stamp the Commissioner's decision without a critical review of the evidence." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "[T]he decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) (quoting *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003)).

## Discussion

### Issue #1: Need for an Assistive Device

Kelly first contends that the ALJ erred by omitting the need for a prescribed assistive device, such as a walker or wheelchair, from all three of her residual functional capacity determinations, and by failing to explain the omission. [DE 12 at 13.] First I note that because the ALJ found Kelly to have been disabled in Period #2, the absence of a specific finding about an assistive device in that RFC does not support any relief for Kelly.

It is true that none of the ALJ's three RFC findings references any prescribed assistive device, but the claim that the ALJ omitted any explanation is a stretch to say

4

the least. The ALJ offered this detailed explanation in her discussion of the RFC for Period #1:

> There appears to be significant upper extremity limits, and a need for [a] wheelchair, during the closed period from July 2, 2019 through August 13, 2020 (B7F/2, B2F/232, B3F/529, and B9F/92). However, during the period from January 1, 2019 through July 1, 2019, and from August 14, 2020 and continuing through the date of the decision, those limitations are not medically necessary, as the medical evidence for the period prior to, and subsequent to the closed period does not show that the claimant was using that assistive device, or had significant upper extremity imitations (B6F/58, B3F/124, and 12F/6).

[A.R. 18.] Within her discussion of the evidence pertinent to each of the three RFCs, the ALJ notes evidence relevant to findings about the need for an assistive device. For instance, the ALJ notes that during a physical exam at an emergency room in late June 2019, which is near the end of Period #1 (January 1, 2019 through July 1, 2019), Kelly "was ambulatory with a steady gait" and "displayed normal muscle tone, and normal coordination." [A.R. 17.]

By contrast, pertinent to Period #2 (July 2, 2019 to August 13, 2020), the ALJ notes that at an emergency room on July 15, 2019, Kelly "was assessed with general weakness and a gait disturbance" and had "limited range of motion and weakness in the lower extremities." [A.R. 19.] The ALJ also described Kelly's period of rehabilitation in August 2019, when she "had weakness in both of her lower extremities" and "was able to ambulate with an assistive device," namely a walker. [A.R. 20.] At the time of Kelly's discharge from rehab, she was "walking with a walker, and her endurance was

5

improving." [A.R. 20.] Then in November 2019, at a consultative examination, Kelly was "unable to walk more than a few steps which required her to use her prescribed wheelchair." [A.R. 20.] She had a slow gait and at that time "[h]er prescribed wheelchair was medically necessary." [A.R. 20.]

As for Period #3 (August 14, 2020 through the date of the ALJ's decision), the ALJ found that "[m]edical improvement was indicated in the physical examination occurring on August 13, 2020" at which "her gait was normal" and Kelly "could walk several steps, then turn, and come back; her balance was easy, and her turns were accomplished easily." [A.R. 21.] The ALJ cited the record of that exam stating that Kelly "does not need to use a cane or walker." [A.R. 21.] In addition, when Kelly returned to her primary care physician in December 2020, she "reported that she had been stable lately" and "denied falls or any balance problems." [A.R. 21.] At that time her "strength was 5/5 in all major muscle groups except the left hip flexor, which was 4/5 secondary to knee surgery." [A.R. 22.] The ALJ relied on this evidence *inter alia* in rejecting the claimant's testimony about continued reliance on assisted devices. [A.R. 22.] Kelly cites the indication that she was unable to walk in tandem, but the same record contains the doctor's conclusion that her "gait is normal," a medical evaluation neither the ALJ nor I have the expertise to second-guess. [A.R. 2265.]

Kelly's disagreement with the ALJ's determinations about her historical and continuing need for an assistive device is not supported by the ALJ's decision or the record evidence on which the ALJ relied. The decision provides more than a minimal

6

analysis of the evidence on the issue, and offers an explanation of the ALJ's reasoning in finding Kelly's allegations to be inconsistent with the evidence. "In rendering a decision, an ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence," but must build a logical bridge from the evidence to her conclusions. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). "An ALJ's analysis of a claimant's RFC 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Anders v. Saul*, 860 Fed.Appx. 428, 432 (7th Cir. 2021), quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Courts "defer to the ALJ's credibility conclusions unless they are 'patently wrong,' meaning they lack any explanation or support. *Anders*, 860 Fed.Appx. at 434, citing *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). These standards are more than met by the ALJ's treatment of Kelly's need for a walker or wheelchair.

### Issue #2: Change in Upper Extremity Limitations from RFC #2 to #3

Kelly next challenges the change in upper extremity limitations between the RFC for Period #2 (when Kelly was deemed disabled) and the RFC for Period #3 (when she no longer was), contending that the change lacks an evidentiary basis. For Period #2, the ALJ found that Kelly could "**occasionally** reach, handle, finger, and feel with bilateral upper extremities." [A.R. 19 (emphasis added).] The RFC for Period # 3, by contrast, concludes that Kelly can "occasionally reach overhead with the bilateral upper extremities, but can frequently reach in all other directions," and that she can "**frequently** handle, finger, and feel with the bilateral upper extremities." [A.R. 21

7

(emphasis added).] Kelly observes that this "represents by far the most significant change between the closed period's RFC and the final RFC because, according to the VE's testimony, the inability (*sic*) to handle, finger, or feel more than occasionally was the deciding factor in the ability to perform Ms. Kelly's past relevant work as an eligibility worker." [DE 12 at 16-17, citing A.R. 74-76.] Kelly argues that "the ALJ does not offer any clear statement as to what evidence supported this significant change." [DE 12 at 17.]

  I must admit that, on the subject of Kelly's use of her hands during Period #2 (the disabled period), the ALJ's decision is a bit confusing. Describing a consultative exam in November 2019, the ALJ first notes that "[a]t the examination, [Kelly] did display poor fine finger manipulation." [A.R. 20.] Within a few sentences however, and still addressing the same exam, the ALJ writes that Kelly "displayed 5/5 grip strength[,] good fine finger and manipulative abilities." [*Id*.] The contradiction derives directly from Dr. Gupta's report of the examination, which contains the same contrary indications. [A.R. 1732, 1734.] With the later statement, the doctor's report indicates that Kelly had "the ability to button, zip, and pick up coins." [A.R. 1734.] The ALJ also noted Kelly's "numbness and tingling in her hands," and the finding that her "strength was only 3/5 in all upper major muscle groups." [A.R. 20.] I am not able to reconcile the contrary statements either by Dr. Gupta or by the ALJ, but the ALJ's observations about Kelly's sensory symptoms and muscle weakness may explain why the ALJ found that during the closed period Kelly could "reach, handle, finger, and feel" only

8

"occasionally." In all events, these inconsistencies are beside the point for present purposes because the findings during the closed period were in Kelly's favor, and obviously she does not challenge them.

Instead, Kelly contends that the ALJ did not explain the evidence that supported the significant change in her conclusion about Kelly's abilities with her hands in Period #3—the period after August 13, 2020. But this argument overlooks the fact that on that day, as the ALJ noted, Kelly first reported that "[s]he was not dropping things, and she displayed a good grasp." [A.R. 21.] From the same medical report, the ALJ also cites a reported increase in Kelly's strength from 3/5 to 5/5 "in all major muscle groups except the left hip flexor." [A.R. 21, 22.] The same August 13, 2020 record finds, particular to the proximal muscles and distal muscles in the bilateral upper extremities, that Kelly had 4+ out of 5 strength. [A.R. 2276.] Each of these facts provides some support for the ALJ's conclusion that Kelly's handling and fingering function had improved.

Kelly argues that exams on July 29 and August 27, 2020 show that her "abilities to handle, finger, and feel remained unchanged both during and after the close of the disability period," underscoring her contention that the improvement the ALJ assessed in the third RFC lacked evidentiary support. [DE 21 at 11.] The records Kelly cites are progress reports from occupational therapy sessions evaluating a program designed to improve Kelly's fine motor coordination. [A.R. 2023.] Contrary to Kelly's argument, these reports from just prior to and shortly after the date dividing Period 2 from Period 3 reflect that even in that month's time, Kelly's upper extremity strength and

9

coordination increased and her percentage of upper extremity functional impairment decreased from 15% to 9%. [DE 2003-2005, 2023-2025.]

A reasonable person would accept the evidence I've cited as adequate to support the change in the ALJ's functional capacity determination with respect to Kelly's handling and fingering. Because the substantial evidence standard is met, the ALJ's findings are conclusive. *Shideler*, 688 F.3d at 310; 42 U.S.C. §405(g). Although the ALJ may not have expressly addressed every piece of relevant evidence, she has provided a logical bridge between the supporting evidence and her conclusions enabling meaningful judicial review. *Jones*, 623 F.3d at 1160.

Let's be honest about it: choosing the precise date that a disability begins and ends is a challenging exercise. The ALJ in this case found that, although Kelly was disabled for a period of roughly 13 months, things changed on August 13, 2020 when the medical records started to reflect substantial improvement in Kelly's upper extremity functioning, including her fine motor skills. Of course, it's a little hard to say that someone is "disabled" one day, and not the next—it's more likely a process that moves along a continuum. Nevertheless, ALJs have the unenviable task of choosing a date, and as long as the date chosen is supported by substantial evidence, and it was in this case, that is all that is required.

**Issue #3: Consideration of Anxiety**

Kelly's final issue concerns the ALJ's handling of her anxiety, which the ALJ found to cause only mild limitations. [A.R. 14-15.] More specifically, Kelly contends that "[t]he ALJ's failure to either include appropriate limitations for Ms. Kelly's anxiety in the RFCs or explain why such limitations are not appropriate...is grounds for reversal." [DE 12 at 22.] It is clear that the ALJ acknowledged that Kelly has been diagnosed with anxiety, but that she found it to constitute only a non-severe impairment. Reviewing the evidence, the ALJ found that Kelly has only mild limitations in the four areas of mental functioning set out in the "Paragraph B" criteria of the Listings for mental disorders.[2] [A.R. 14-15.] Kelly cites no authority for her contention that the mere failure to expressly categorize the anxiety as severe or non-severe is reversible error. [DE 21 at 12.] In any event, the ALJ's conclusion is quite clear. The ALJ's discussion of Kelly's severe impairments is followed, by contrast, with her analysis of two other medical conditions – mild degenerative joint disease of the bilateral knees and anxiety – making abundantly plain that she found Kelly's anxiety to be non-severe. This interpretation is bolstered by the ALJ's later finding that the opinions of the state agency psychological consultants were persuasive and "generally consistent with the medical evidence that shows that the claimant had a nonsevere mental impairment." [A.R. 18.]

---

[2] The "Listings" are the Social Security regulations' detailed catalogue of impairments considered severe enough to prevent any gainful activity and support a presumptive finding of disability.

Kelly does not dispute the ALJ's determination that her anxiety causes only mild limitations, but nonetheless argues that the ALJ committed error when she did not include in the RFC limitations based on anxiety. Kelly does not cite medical evidence supporting particular RFC limitations, and does not suggest what limitations should have been included. Kelly's hearing testimony did not address her anxiety or any difficulties associated with it. Any error in the RFC assessment is harmless where appropriate limitations are not hypothesized by the claimant and the medical record does not support any. *Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021).

Kelly cites the records of March 15, 2018, April 16, 2018 and May 14, 2018 office visits to Dr. Paul Okolocha noting that her mood is anxious, but the same records nonetheless conclude that "[h]er behavior is normal" and her "[j]udgment and thought content [are] normal." [A.R. 386-387; 390-391; 400-401.] Dr. Okolocha's treatment record does not support the existence of any particular functional limitation due to anxiety. Kelly cites *Eakin v. Astrue*, 432 Fed.Appx. 607, 611 (7th Cir. 2011), but that decision does not support Kelly's assertion that because anxiety was found to be a medically determinable impairment, even though non-severe, the RFC must contain corresponding limitations. Instead, *Eakin* requires the ALJ's evaluation of "all limitations that arise from a medically determinable impairment" and "a discussion describing how the evidence, both objective and subjective supports the ultimate conclusion." *Id*.

12

The ALJ's decision meets these standards by its discussion of her conclusions about Kelly's anxiety and its findings of only mild resulting limitations. [A.R. 14-15.] The ALJ cites the February 11, 2020 and August 19, 2020 findings of Kelly's treating physician Dr. Paul Okolocha that although Kelly's mood is anxious, her behavior, thought content and judgment are all normal. [A.R. 18, citing A.R. 2033, 2063.] Relying on subjective evidence of Kelly's own reports of her functioning [AR 14-15], the ALJ explains for each of four broad areas of functioning why she finds that Kelly has only a mild limitation, which the regulations define as a conclusion that Kelly's ability to function "independently, appropriately, effectively and on a sustained basis is slightly limited." 20 C.F.R. pt. 404, subpt. P, app. 1 §1200(F)(2)(b). The ALJ clearly considered Kelly's anxiety, but found it not to impose "more than a minimal limitation in [her] ability to do basic work activities." 20 C.F.R. §404.1520a(d)(1). Kelly demonstrates no reversible error in the ALJ's analysis of her anxiety and her conclusion that it did not support particular limitations in Kelly's residual functional capacity.

## Conclusion

The ALJ sufficiently articulated her findings and conclusions to permit meaningful judicial review, so a remand is not warranted for lack of explanation. Beyond that, my role is not to determine whether the plaintiff was, in fact, disabled during the relevant time periods, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Jarnutowski*, 48 F.4th at 773. Applying these standards, I will affirm the denial of disability benefits in Period #1

and Period #3. In reviewing the ALJ's decision, I may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [my] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus*, 994 F.3d at 900. After consideration of each of Kelly's assertions of error, I conclude that substantial evidence supports the ALJ's determination of the periods in which Kelly was and is not disabled, and the ALJ's decision provides a logical bridge between the evidence and the result. *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021).

**ACCORDINGLY:**

The decision of the Commissioner of Social Security denying Brianna Lynn Kelly's application for Social Security disability benefits and supplemental security income benefits is AFFIRMED.

The Clerk shall enter judgment in favor of the defendant Commissioner and against plaintiff Kelly.

SO ORDERED on February 6, 2023.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT